UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| AGUINALDO BRAZAO, individually and as p.p.a. K.V. MARQUES, a minor child,<br><br>*Plaintiffs*,<br>v.<br>PLEASANT VALLEY APARTMENTS, LLC, A.R. BUILDING COMPANY, INC., 84 LUMBER COMPANY, and UNITED BUILDERS SOLUTIONS INC.,<br><br>*Defendants*. | No. 3:21-cv-01275 (MPS) |

**RULING ON DEFENDANT 84 LUMBER CO.'S MOTION FOR SUMMARY JUDGMENT AS TO COUNTS I AND II OF ITS CROSSCLAIMS AGAINST UNITED BUILDING SOLUTIONS, INC.**

**I.      INTRODUCTION**

This case arises out of an incident in which Plaintiff Aguinaldo Brazao fell from the second floor of an under-construction building after the railing on the porch came loose. Defendants A.R. Building Co., Inc. ("A.R. Building") and Pleasant Valley Apartments, LLC ("Pleasant Valley") joined 84 Lumber Co. ("84 Lumber") as a third-party defendant, and 84 Lumber in turn brought crossclaims against its subcontractor, United Builders Solutions, Inc. ("UBS"). 84 Lumber now moves for summary judgment as to Counts I and II of its crossclaims against UBS, arguing that UBS breached the Subcontractor Agreement between the parties by failing to indemnify and defend 84 Lumber. Because I find there to be a genuine dispute of material fact as to whether 84 Lumber's potential liability arises out of or results from UBS's installation of the railings, I DENY 84 Lumber's motion for summary judgement on Count I. Because the parties have resolved 84 Lumber's demand for a defense, I DENY as moot 84 Lumber's motion for summary judgement on Count II.

1

## II.     BACKGROUND

### A.     Factual Allegations

On December 11, 2017, 84 Lumber entered into a contract with A.R. Building to provide materials and perform contracting services at a development called the Pleasant Valley Apartments. ECF No. 140-3 at 2; ECF No. 149 at 1–2. The contract between 84 Lumber and A.R. Building required 84 Lumber to, among other things, install railings on the porches of certain buildings. ECF No. 149 at 1; ECF No. 140-3 at 3.

84 Lumber subcontracted the installation of railings to UBS. ECF No. 149 at 1–2; ECF No. 140-4 at 2–23; ECF No. 140-5 at 6. Under the Subcontractor Agreement, UBS agreed to perform the installation of the railings on the premises, and 84 Lumber agreed to supply the materials. ECF No. 149 at 2; ECF No. 140-4 at 23. In addition to providing specific work obligations, the Subcontractor Agreement also set forth UBS's indemnity and defense obligations, which state in relevant part:

> To the fullest extent permitted by law, the Subcontractor [defined as UBS in the agreement] shall defend, indemnify and hold harmless the Contractor [defined as 84 Lumber in the agreement] from and against all claims, liens, lawsuits, and demands whether with or without merit, damages, losses, judgments, settlements and expenses, including but not limited to attorney's fees and expenses, arising out of or resulting from the performance of the Subcontractor's work under this Subcontract or the Subcontractor's failure to comply with any obligation or duty in this agreement. . . . This indemnity and defense obligation is valid regardless of whether such claim, damage, loss or expense is caused in part by the Contractor. Additionally, if allowed by applicable state law, this indemnity and defense obligation covers all claims, damages, losses or expenses caused solely by the Contractor. This indemnity and defense obligation is valid regardless of the theories of liability whether in contract, tort, or any other theory. Additionally, Subcontractor's defense and indemnity obligations shall extend to claims occurring after this Agreement is terminated and shall continue until it is adjudicated that any and all actions against the Contractor relating to this Agreement are fully and finally barred by applicable laws . . . The duty to defend includes the duty to pay reasonable attorney's fees incurred by 84 in defending such actions . . . .

ECF No. 149 at 3, 6; ECF No. 140-4 at 6.  The agreement also includes a severability clause that states: "The waiver or invalidity of any provision shall not affect the validity of any other provision of this Agreement."  ECF No. 140-4 at 8.

UBS completed the railing installation on Building B, one of the under-construction buildings at the site, around November 2019.  ECF No 149 at 2; ECF No. 140-5 at 8–9.  While UBS was responsible for installing the railings at Building B, it was not responsible for the "finish work"—that is, preparing the trim, installing cabinetry, and performing other interior work—within Building B.  ECF No 149-5 at 3.

After UBS installed the railings, other contractors, including electricians, plumbers, and sheetrockers, required access to the area of building where the accident ultimately occurred to do the finish work.  ECF No. 149-2 at 11–12; ECF No. 149-5 at 10–11.  To bring in necessary materials and equipment, at least some of these other contractors removed the railings from certain porches on the second and third floors of Building B so that they could use the porches as loading docks.  ECF No. 149-2 at 8, 11–12; ECF No. 149-3 at 6; 149-5 at 10; ECF No. 149-6 at 3–4.  These contractors reinstalled the railings when they finished loading their materials.  ECF No. 149-6 at 3–4.  As relevant here, the porch of Unit 205 had been used as a loading dock, and the railing from that porch had been removed and reinstalled.  ECF No. 149-2 at 14.  Chris DeMelo, an 84 Lumber employee, explained his knowledge of the removal and reinstallation of railings from Building B as follows:

> Q.  Have you ever seen an occasion at the Pleasant Valley project where materials were being loaded into second or third floors so the railings had to be -- panels had to be taken off to allow that to happen?
>
> A.  Yes.
>
> Q.  And who was taking those panels off specifically?  Who would you see take them off?

> A. Whoever was loading the material.
>
> \*\*\*
>
> Q. So is it fair to say you knew the railing on Unit 205 was being removed and being put back on to allow for loading to happen prior to this incident?
>
> A. Yes.

*Id.* at 8, 14. 84 Lumber did not instruct UBS to remove or reinstall the railings after their initial installation, nor did 84 Lumber instruct UBS to monitor the removal or reinstallation. ECF No. 149-2 at 9; ECF No. 149-5 at 4, 10–11.

On January 16, 2020, Aguinaldo Brazao arrived at the construction site and, in connection with his employment with a cleaning agency, began collecting empty boxes from inside Building B. ECF No. 149 at 5; ECF No. 149-1 at 3–6. After collecting the boxes, Brazao leaned against the porch railing of Unit 205 on the second floor of Building B to throw the boxes to the ground below. *Id.* As he did so, the railing came loose, and he fell to the ground. ECF No. 149 at 5; ECF No. 149-1 at 7.

**B.    Procedural History**

Brazao, on behalf of himself and his minor son, filed this suit on September 23, 2021, against A.R. Building and Pleasant Valley. ECF No. 1. On January 13, 2022, A.R. Building and Pleasant Valley joined 84 Lumber as a third-party defendant, ECF No. 44, and the next day Plaintiffs filed their Second Amended Complaint, adding 84 Lumber and UBS as defendants, ECF No. 54. Plaintiffs filed a Third Amendment Complaint on November 3, 2022. ECF No. 134-2. Plaintiffs assert claims of negligence, negligence *per se*, and vicarious liability against both 84 Lumber and UBS. *Id.* at 15–25. These claims arise out of a common set of allegations that 84 Lumber and UBS

> failed to: design, construct, install and maintain the Premises in a reasonably safe manner; reasonably inspect the Premises to ensure that it was in a reasonably safe condition and did not pose an unreasonable risk of harm to invitees; and warn invitees of unsafe or dangerous conditions on the Premises of which it was or through due diligence should have been aware.

*Id.* at 19, 24.

84 Lumber tendered to UBS for indemnity and defense on January 20, 2022, shortly after being named as a defendant in the Complaint, but UBS did not accept 84 Lumber's tender. ECF No. 149 at 4; ECF No. 140-7. 84 Lumber reissued its tender for indemnity and defense on September 2, 2022, October 4, 2022, and November 28, 2022, but UBS denied tender on each occasion. ECF No. 149 at 4–5; ECF No. 140-8 at 117–120; ECF No. 140-9; ECF No. 140-10; ECF No. 140-11.

On March 10, 2022, 84 Lumber brought crossclaims against UBS for (I) breach of contract – failure to indemnify, ECF No. 74 at 12–14; (II) breach of contract – failure to defend, *id.* at 14–15; (III) breach of contract – failure in performance, *id.* at 15–17; (IV) negligence, *id.* at 17; (V) breach of warranty, *id.* at 17–18; and (VI) common law indemnification, *id.* at 18–19. On November 29, 2022, 84 Lumber filed the present motion for summary judgment as to Counts I and II of its crossclaims. ECF No. 140. In support of its motion, 84 Lumber argues that all allegations against it "directly arise from UBS's allegedly defective performance of its contractual obligation to install railings at the Pleasant Valley Apartments worksite," thus triggering UBS's indemnity and defense obligations under the Subcontractor Agreement. ECF No. 140-1 at 3.

On January 20, 2023, UBS filed a response arguing that the indemnity and defense provision of the Subcontractor Agreement is void as being against public policy, ECF No. 148 at 6–8, and that there are genuine disputes of material fact regarding whether the claims against 84

Lumber arise out of or result from UBS's installation of the railings, *id.* at 8–11. On February 3, 2023, 84 Lumber filed a reply, in which it noted that it had reached a resolution with UBS as to Count II of its crossclaim. ECF No. 151 at 1 n.1.

## III.   LEGAL STANDARD

Summary judgment is appropriate when the party moving for summary judgment shows that "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (internal quotation marks omitted). When considering a motion for summary judgment, "all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought." *Gallo v. Prudential Residential Servs. Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994).

## IV.   DISCUSSION

I first consider whether the indemnity provision of the Subcontractor Agreement is void as being against public policy before considering whether there is a genuine dispute of material fact regarding whether 84 Lumber's potential liability arises out of or results from UBS's installation of the railings.

### A.   Indemnity Provision's Validity Under § 52-572k

UBS argues that the indemnity provision of the Subcontractor Agreement—a portion of which requires UBS to indemnify 84 Lumber for 84 Lumber's own negligence—is void under § 52-572k. Section 52-572k of the Connecticut General Statutes provides in relevant part:

> Any covenant, promise, agreement or understanding entered into in connection with or collateral to a contract or agreement relative to the construction, alteration, repair or maintenance of any building, structure or appurtenances thereto including

6

moving, demolition and excavating connected therewith, that purports to indemnify or hold harmless the promisee against liability for damage arising out of bodily injury to persons or damage to property caused by or resulting from the negligence of such promisee, such promisee's agents or employees, is against public policy and void . . . .

Conn. Gen. Stat. Ann. § 52-572k(a). "The purpose of the statute is to nullify any provision in 'construction contracts' which grants immunity to either party for acts of negligence. Where negligence is concerned a party cannot by contract relieve itself of such liability." *Costin v. Bhandari Constructors & Consultants, Inc.*, 285 F. Supp. 2d 165, 169 (D. Conn. 2003) (quotation marks omitted).

UBS argues that the entire indemnity provision of the Subcontractor Agreement is void because a portion of the indemnity provision allegedly violates § 52-572k. ECF No. 148 at 6–8. The relevant portion of the indemnity provision states: "This indemnity and defense obligation is valid regardless of whether such claim, damage, loss or expense is caused in part by the Contractor. Additionally, if allowed by applicable state law, this indemnity and defense obligation covers all claims, damages, losses or expenses caused solely by the Contractor." ECF No. 140-4 at 6; ECF No. 149 at 6. According to UBS, this provision shifts liability from 84 Lumber even in instances where 84 Lumber acted negligently in contravention of § 52-572k.

On this point, I agree. These portions of the indemnity provision plainly seek to indemnify 84 Lumber against damages "caused in part by" or "caused solely by" 84 Lumber's own negligence, and § 52-572k prohibits indemnification in such situations.

I do not, however, agree with UBS's conclusion that the entire indemnity provision is void as a result of this offending language. "This court has previously made clear that section 52-572 does not require courts to cast aside an entire indemnity provision merely because a single clause contained therein offends the statute." *Precision Trenchless, LLC v. Saertex*

7

*multiCom LP*, No. 3:19-cv-00054, 2021 WL 4310668, at *12 (D. Conn. Sept. 22, 2021).  This approach is "particularly appropriate" in situations in which the contract in question contains a savings or severability clause.  *Id.*  Here, both exist.  The indemnity provision of the contract opens with a savings clause limiting UBS's indemnity obligation "[t]o the fullest extent permitted by law."  ECF No. 149 at 3; ECF No. 140-4 at 6.  And the agreement includes a severability clause that states:  "The waiver or invalidity of any provision shall not affect the validity of any other provision of this Agreement."  ECF No. 140-4 at 8.  Together, these clauses capture the parties' intent to preserve all portions of the agreement permitted by law.  Moreover, severance here is easily achieved.  Absent the offending language, the indemnity provision obligates UBS to indemnify 84 Lumber from suits "arising out of or resulting from the performance of [UBS's] work under this Subcontract or [UBS's] failure to comply with any obligation or duty in this agreement."  ECF No. 149 at 3; ECF No. 140-4 at 6.

Thus, I find that § 52-572k voids only the portion of the indemnity provision that requires UBS to indemnify 84 Lumber against 84 Lumber's own negligence.  Because the offending provision can be severed from the rest of the agreement, I decline to deny 84 Lumber's motion for summary judgment on this basis.

B.     **Factual Disputes Regarding Brazao's Accident**

I now turn to whether there is a genuine issue of material fact as to whether Brazao's accident "aros[e]out of or result[ed] from" UBS's installation of the railing.  84 Lumber argues that "the clear and unambiguous indemnification provision in the Subcontract applies to the factual circumstances of the present case, namely, the alleged failure of UBS to install the railings properly."  ECF No. 140-1 at 8–9.

"Generally, because a duty to indemnify is based on the facts established at trial and the theory under which judgment is actually entered in a case, . . . it is often premature to issue a declaratory judgment as to the duty to indemnify before the basis for liability is established." *Pacific Employers Ins. Co. v. St. Francis Care Inc.*, 729 Fed. Appx. 129, 130 (2d Cir. 2018) (quotation marks and citation omitted). That is the case here. As the record indicates, there is an unresolved factual dispute as to which party is responsible for Brazao's accident. 84 Lumber argues that his accident is "attributable to UBS's negligence," ECF No 140-1 at 8, because UBS installed the railing on the porch of Unit 205, as was its obligation under the Subcontractor Agreement, ECF No. 149 at 2. But UBS responds that external causes resulted in Brazao's fall. UBS points to evidence that other contractors removed the railings from certain porches on the second and third floors of Building B so that they could use the porches as loading docks. ECF No. 149-2 at 8, 11–12; ECF No. 149-3 at 6; 149-5 at 98; ECF No. 149-6 at 3–4. More specifically, there is evidence that other contractors removed and reinstalled the railing on Unit 205 after UBS's initial installation of the railing and before the accident. *See* ECF No. 149-2 at 14. As Chris DeMelo, an 84 Lumber employee, affirmed at his deposition, "[he] knew the railing on Unit 205 was being removed and being put back on to allow for loading to happen prior to this incident." *Id*. UBS also points to evidence that 84 Lumber did not instruct UBS to either perform or monitor the removal and reinstallation of railings after their initial installation. ECF No. 149-2 at 9; ECF No. 149-5 at 4, 10–11.

Together, this evidence raises the reasonable inference that Brazao's fall did not arise out of or result from UBS's installation of the railing but rather from the negligence of one of the other contractors working at the site. Viewing the evidence in favor of nonmovant UBS, as I must for the purposes of summary judgement, I find that a reasonable jury could decide this

factual dispute in favor of UBS. *See R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 (2d Cir. 1997) ("If there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." (alterations and quotations marks omitted)); *see also Precision Trenchless, LLC v. Saertex multiCom LP*, No. 3:19-cv-005, 2022 WL 596740, at *34 (D. Conn. Feb. 28, 2022) ("The issue of causation generally is a question reserved for the trier of fact." (alterations and quotations marks omitted)). Thus, there exists a genuine dispute of material fact as to the cause of Brazao's accident, and I cannot rule on the indemnity issue while this dispute remains unresolved. *See, e.g.*, *Seitz v. J. C. Penney Properties, Inc.*, No. 3:15-cv-01131, 2017 WL 4316874, at *5 (D. Conn. Sept. 28, 2017) ("To determine whether the [indemnity] agreement applies to this case, the Court would have to determine the cause of [the] accident. Because the cause of [the] accident is disputed, the Court is unable to grant summary judgment on the indemnification claim.").

I therefore deny 84 Lumber's motion for summary judgement on Count I of its crossclaims against UBS.

**V.      CONCLUSION**

For the foregoing reasons, I DENY 84 Lumber's motion for summary judgement on Count I and DENY as moot 84 Lumber's motion for summary judgement on Count II. IT IS SO ORDERED.

                                                /s/
                              Michael P. Shea, U.S.D.J.

Dated:      Hartford, Connecticut
              August 3, 2023