## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| AGUINALDO BRAZAO, individually and as p.p.a. K.V. MARQUES, a minor child, <br><br> *Plaintiffs*, <br> v. <br><br> PLEASANT VALLEY APARTMENTS, LLC, A.R. BUILDING COMPANY, INC., 84 LUMBER COMPANY, and UNITED BUILDERS SOLUTIONS INC., <br><br> *Defendants*. | No. 3:21-cv-01275 (MPS) |

**RULING ON A.R. BUILDING'S MOTION FOR SUMMARY JUDGMENT AS TO COUNTS II AND III OF ITS THIRD-PARTY COMPLAINT AGAINST 84 LUMBER**

**I.     INTRODUCTION**

This case arises out of an incident in which Plaintiff Aguinaldo Brazao fell from the second floor of an under-construction building after the railing on the porch collapsed. Defendants A.R. Building Co., Inc. ("A.R. Building") and Pleasant Valley Apartments, LLC ("Pleasant Valley") joined 84 Lumber Co. ("84 Lumber") as a third-party defendant.  A.R. Building now moves for summary judgment as to Counts II and III of its third-party complaint against 84 Lumber, arguing that 84 Lumber breached its indemnity and defense obligations to A.R. Building and that 84 Lumber breached its work obligations under the Master Contractor Agreement between the parties.  For the reasons explained below, I grant A.R. Building's motion as to 84 Lumber's duty to defend but deny it as to all other claims.

**II.    BACKGROUND**

**A.     Factual Allegations**

On December 11, 2017, 84 Lumber entered into a contract (the "Master Contractor Agreement") with A.R. Building to provide materials and perform contracting services at a

development site in Groton, Connecticut.  ECF No. 182-3 at 2–3.  The Master Contractor
Agreement required 84 Lumber to, among other things, install railings on the porches or
balconies of certain buildings.  ECF No. 190 at ¶ 3.  In addition to providing specific work
obligations, the Master Contractor Agreement also set forth 84 Lumber's indemnity and defense
obligations, which state in relevant part:

> Contractor [*i.e.*, 84 Lumber] recognizes that Contractor, and not A.R. BUILDING
> COMPANY, INC., is to be responsible for injuries to Contractor or its employees
> or others or for other claims arising from or relating to the Work.  Contractor agrees
> to hold A.R. BUILDING, Inc. harmless against any such injuries and claims.
> Accordingly;

> **A.    Indemnification**

> To the fullest extent permitted by law, Contractor hereby agrees to defend, save,
> indemnify and keep A.R. BUILDING COMPANY, INC. harmless against all
> demands, claims, causes of actions, damages, liabilities, penalties, and expenses
> (including fees and disbursements of counsel) arising out of or resulting from
> Contractor's performance of (and/or failure to perform) this Agreement and/or the
> Work described in this Agreement or the materials, supplies, or goods provided by
> Contractor, and for or on account of injury to or death of persons, including
> Contractor's employees, Contractor's Sub-Contractors or their employees, or
> damage to or destruction of property, or any bond obtained for same, caused, in
> whole or in part, by any act or omission, or alleged act or omission, of Contractor,
> Contractor's subcontractors, its employees, or agents, whether or not caused in part
> by A.R. BUILDING COMPANY, INC. ("Claim").

ECF No. 190 at ¶ 11; ECF No. 182-3 at 8.  The agreement also required that 84 Lumber would
maintain an insurance policy covering itself and A.R. Building.  *Id.* ("At all times while
performing the Work, and for a period of two (2) years thereafter, [84 Lumber] will maintain for
the benefit of itself and A.R. Building . . . the minimum insurance coverages set forth in
Attachment A.").  In addition, the agreement contains a rider (the "Rider"), which states, in
relevant part:

> Any defense, indemnification, hold harmless, additional insured or similar
> obligation imposed on 84 [Lumber] under the Agreement shall be limited to any
> claims, demands, damages, defense expenses (including reasonable attorneys' fees

and litigations costs) or liabilities to the extent caused by 84[ Lumber's] negligence
and joint negligence in or relating to the performance of its Work.

*Id.* at 2.

84 Lumber subcontracted the installation of railings at the work site to United Builders

Solutions, Inc. ("UBS").  ECF No. 190 at ¶ 15; ECF No. 190-1 at 7–8.  UBS completed the

railing installation on Building B, one of the under-construction buildings at the site, in

November 2019.  ECF No. 190 at ¶ 7; ECF No. 190-1 at 8–9.  On January 10, 2020, A.R.

Building executed an "Inspection Sign Off," indicating that the siding, decking, and railings at

Building B had been completed.  ECF No. 190-2 at 15–16; ECF No. 190-3.

After UBS installed the railings, other contractors removed the railings of some of the

second and third floor balconies so that they could use them as loading platforms for materials.

ECF No. 190-2 at 3–5.  According to one A.R. Building superintendent, these contractors were

responsible for re-installing the railings after they finished loading their materials.  *Id.* at 5–8, 14.

The plaintiff, Aguinaldo Brazao, claims that on January 16, 2020, he fell from the second

floor of Building B after he leaned against the porch railing and it collapsed.  ECF No. 190 at 1,

3.

## B.   Procedural History

Brazao, on behalf of himself and his minor son, filed this suit on September 23, 2021,

against A.R. Building and Pleasant Valley.  ECF No. 1.  On January 13, 2022, A.R. Building and

Pleasant Valley joined 84 Lumber as a third-party defendant, ECF No. 44, and the next day

Plaintiffs filed their Second Amended Complaint, adding 84 Lumber and UBS as defendants,

ECF No. 54.  Plaintiffs filed a Third Amendment Complaint on November 3, 2022.  ECF No.

134-2.  Plaintiffs assert claims of negligence, negligence *per se*, and vicarious liability against

both A.R. Building and 84 Lumber. *Id.* at 11–21. These claims arise out of a common set of

allegations that A.R. Building and 84 Lumber

> failed to: design, construct, and maintain the Premises in a reasonably safe manner; reasonably inspect the Premises to ensure that it was in a reasonably safe condition and did not pose an unreasonable risk of harm to invitees; and warn invitees of unsafe or dangerous conditions on the Premises of which it was or through due diligence should have been aware.

*Id.* at 15, 19.

A.R. Building tendered its defense to 84 Lumber on November 9, 2021, ECF No. 190 at

4; ECF No. 182-4, but 84 Lumber did not accept A.R. Building's tender, ECF No. 190 at 4. 84

Lumber filed an Answer to A.R. Building's third-party complaint and denied that it owed A.R.

Building a defense or indemnification. ECF No. 190 at 4; *see generally* ECF No. 75.

On May 23, 2023, A.R. Building filed the pending motion for summary judgment against

84 Lumber as to Counts II and III of its crossclaims. ECF No. 182. In support of its motion,

A.R. Building argues that the allegations of the complaint trigger 84 Lumber's duty to defend

and indemnify A.R. Building and that 84 Lumber admitted as much by seeking to enforce its

own subcontractor's indemnity and defense obligations. *Id.* at 1; *see also* ECF No. 140 (84

Lumber's motion for summary judgment as to Count I of its crossclaims against UBS). On July

24, 2023, 84 Lumber filed a response arguing that there are genuine disputes of material fact

regarding whether the claims against A.R. Building arise out of or result from 84 Lumber's

installation of the railings. ECF No. 189.

## III.    LEGAL STANDARD

Summary judgment is appropriate when the party moving for summary judgment shows

that "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "A genuine

dispute of material fact exists for summary judgment purposes where the evidence, viewed in the

light most favorable to the nonmoving party, is such that a reasonable jury could decide in that

4

party's favor." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (internal

quotation marks omitted).  When considering a motion for summary judgment, "all ambiguities

must be resolved and all inferences drawn in favor of the party against whom summary judgment

is sought." *Gallo v. Prudential Residential Servs. Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir.

1994).

## IV.  DISCUSSION

In Count II of its third-party complaint, A.R. Building alleges that 84 Lumber has a duty

to indemnify and defend it in the underlying action brought by Brazao.  ECF No. 44 at 6–7.  In

Count III, A.R. Building alleges that 84 Lumber breached portions of its work obligations under

the Master Contractor Agreement.  *Id.* at 7–9.  I first consider whether 84 Lumber owes A.R.

Building a duty to indemnify before considering whether it owes a duty to defend.  I will then

consider whether A.R. Building is entitled to summary judgment as to Count III.

### A.      84 Lumber's Duty to Indemnify

A.R. Building argues that it is entitled to summary judgment as to its claims for

indemnity.  In making this argument, A.R. Building leans heavily on 84 Lumber's motion for

summary judgment against its subcontractor, UBS.  As A.R. Building argues, because the

indemnity provisions of the Master Contractor Agreement and 84 Lumber's subcontractor

agreement with UBS are similar, and because 84 Lumber moved for summary judgment against

UBS, A.R. Building is entitled to indemnity for the same reasons 84 Lumber argued it was

entitled to indemnity.  *See* ECF No. 182-1 at 7 ("[I]nasmuch as 84 Lumber sought

indemnification for any negligent conduct that may be attributed to UBS for failing to properly

install the railings on the property, A.R. Building does as well . . . .").  In fact, A.R. Building

goes so far as to say that its arguments for indemnity "are almost identical" to 84 Lumber's

arguments.  *Id.* at 1.

But I have denied 84 Lumber's motion for summary judgment as to its indemnification claim against UBS because I found there to be genuine issues of material fact as to whether Brazao's accident arose out of or resulted from UBS's installation of the railing.  *See Brazao v. Pleasant Valley Apartments, LLC*, No. 3:21-CV-01275, 2023 WL 4975667 (D. Conn. Aug. 3, 2023).  For the same reasons, I now deny A.R. Building's motion for summary judgment as to its indemnification claim.  There is an unresolved factual dispute as to which party is responsible for Brazao's accident.  A.R. Building argues that the accident is a result of either 84 Lumber's or UBS's negligence.  But 84 Lumber points to evidence that other contractors removed the railings from certain porches on the second and third floors of Building B so that they could use the porches as loading platforms.  ECF No. 190-2 at 3–7, 14.  And 84 Lumber points to the testimony of an A.R. Building superintendent who testified that these other contractors were responsible for re-installing the railings after they finished loading their materials.  *Id.* at 5–7, 14.

As I wrote in my ruling denying 84 Lumber's motion for summary judgment against UBS, "this evidence raises the reasonable inference that Brazao's fall did not arise out of or result from UBS's installation of the railing but rather from the negligence of one of the other contractors working at the site."  *Brazao*, 2023 WL 4975667, at *5.  When viewing the evidence in favor of nonmovant 84 Lumber, as I must for the purposes of summary judgment, I find that a reasonable jury could decide this factual dispute in favor of 84 Lumber.  *See R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 (2d Cir. 1997) ("If there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." (alterations and quotations marks omitted)); *see also Precision Trenchless, LLC v. Saertex multiCom LP*, No. 3:19-cv-005, 2022 WL 596740, at *34 (D. Conn. Feb. 28, 2022) ("The issue of causation generally is a question reserved for the

trier of fact." (alterations and quotations marks omitted)).  Thus, there is a genuine dispute of

material fact as to the cause of Brazao's accident, one the trier of fact will have to resolve.  *See,*

*e.g.*, *Seitz v. J. C. Penney Properties, Inc.*, No. 3:15-cv-01131, 2017 WL 4316874, at *5 (D.

Conn. Sept. 28, 2017) ("To determine whether the [indemnity] agreement applies to this case, the

Court would have to determine the cause of [the] accident.  Because the cause of [the] accident is

disputed, the Court is unable to grant summary judgment on the indemnification claim.").  I

therefore deny A.R. Building's motion for summary judgment as to 84 Lumber's duty to

indemnify.

### B.    84 Lumber's Duty to Defend

A.R. Building also moves for summary judgment as to 84 Lumber's duty to defend.

Generally, under Connecticut law, "the duty to defend is broader than the duty to indemnify."

*Travelers Cas. & Surety Co. of Am. v. Netherlands Ins. Co.*, 312 Conn. 714, 739 (2014) (internal

quotation marks omitted).  "[The] duty to defend is triggered if at least one allegation of the

complaint falls even possibly within the coverage."  *Id.*; *see also Coregis Ins. Co. v. Am. Health*

*Found., Inc.*, 241 F.3d 123, 127 (2d Cir. 2001) (explaining that the duty to defend "is measured

solely by whether the complaints against the insured allege facts that, if proven true, would

present a claim within the scope of the policy's coverage.").

According to A.R. Building, "[t]he allegations contained in the Plaintiff's Second

Amended Complaint clearly arise from the installation of the railings on the subject property,

which 84 Lumber had agreed to perform."  ECF No. 182-1 at 11.  84 Lumber responds by

arguing that the general rule that "the duty to defend is broader than the duty to indemnify" does

not necessarily apply outside of the insurance context.  ECF No. 189 at 11–14.  In support of this

argument, 84 Lumber points to a recent ruling in which the Connecticut Superior Court declined

to apply the insurer duty-to-defend standard in a non-insurance context.  In *Medina v CEO Services, LLC*, the court reasoned that "the risks assumed by an insurance company in issuing a liability policy to an insured are far different, and greater, than the risks assumed by a snow removal contractor that agrees to remove snow and ice from only certain portions of its customer's property."  No. UWY-CV-19-6044945-S, 2022 WL 2063987, at *3 (Conn. Super. Ct. June 7, 2022).  The *Medina* court noted that there was a genuine issue of material fact regarding liability, and as such, declined to award summary judgment on the issue of the duty to defend. *Id.*

Although there does not appear to be any appellate authority on this issue in Connecticut courts, the majority of Connecticut trial courts have reached the opposite conclusion from *Medina*.  *See, e.g.*, *Harman v. Belisle*, No. HHDCV126035291S, 2014 WL 5137992, at *14 (Conn. Super. Ct. Sept. 4, 2014) ("Although the present action does not involve an insurance contract, but rather that between a possessor of property and a service provider, the same rule of construction applies as to the duty to defend."); *Doe v. Terry*, No. X01UWYCV085008897S, 2011 WL 383963, at *4 (Conn. Super. Ct. Jan. 10, 2011) ("There is no reason why a different rule of construction should apply [regarding the duty to defend], where, as here, there exists a detailed contract which was negotiated at arms length between private, sophisticated, business parties"); *Gemma Power Sys., LLC v. Smedley Co.*, No. HHDECV156059165, 2017 WL 3927642, at *2 (Conn. Super. Ct. July 26, 2017) ("The court finds persuasive the decisions of the Superior Court which have held that our jurisprudence regarding indemnification in the context of insurance contracts applies equally to contracts between sophisticated business entities.").  Indeed, Connecticut Courts have specifically held that "[t]here is no reason why a different rule of construction should apply, where, as here, we are dealing with a detailed contract covering a

substantial construction project, which was entered into between knowledgeable and sophisticated business parties, in a commercial setting." *Turner Const. Co. v. Zurich Am. Ins. Co.*, No. CV075004719S, 2009 WL 1312544, at *5 (Conn. Super. Ct. Apr. 14, 2009).

The task of a federal district court assessing an unsettled issue of state law is to predict which rule the state's highest court would adopt. *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994). Here, however, I need not undertake that task because the plain language of the Master Contractor Agreement supports imposition of a duty to defend based on the allegations in the plaintiffs' complaint. The pertinent language of the Agreement requires 84 Lumber "*to defend* . . . A.R. Building . . . *against all* demands, *claims*, causes of actions, damages, liabilities, penalties, and expenses (*including fees and disbursements of counsel) arising out of* or resulting from Contractor's performance of . . . this Agreement and/or *the Work* described in this Agreement . . . ." ECF No. 182-3 at 8 (emphases added). The "*Work*" is defined as 84 Lumber's "provid[ing of] materials and/or [performance of] services . . . in connection with AR Building['s] residential building operations." *Id.* at 3 (emphasis added). The italicized language in the preceding two sentences is broad and suggests that 84 Lumber agreed to defend against "claims" brought against A.R. Building that arose out of 84 Lumber's services, including the installation of the railings, even before the factfinder made any findings as to causation or liability. A "claim" typically denotes an assertion that has not yet been adjudicated. *See* Black's Law Dictionary (11th ed. 2019) (defining "claim", in part, as "[t]he *assertion* of an existing right" (emphasis added)); Merriam-Webster Online (defining "claim" as "a demand for something due or believed to be due" and "an assertion open to challenge"); *see also QSP, Inc. v. Aetna Cas. and Sur. Co.*, 256 Conn. 343, 373-74 (2001) (in an insurance policy, "the term 'arising out of' is very broad . . . . It is generally understood that for

liability for an accident or an injury to be said to 'arise out of' an occurrence or offense, it is
sufficient to show only that the accident or injury 'was connected with,' 'had its origins in,'
'grew out of,' 'flowed from', or 'was incident to' that occurrence or offense, in order to meet the
requirement that there be a causal relationship between the accident or injury and that occurrence
or offense." (alterations and internal quotation marks omitted)).  And the most natural way to
determine whether the plaintiffs' "claim" against A.R. Building "ar[ose] out of" 84 Lumber's
"providing of materials" or "performance of services" is to examine the complaint, which sets
forth the plaintiffs' claims.  The complaint here alleges the following:

- "A.R. Building Company, Inc. owned and/or operated a property located at 700 Pleasant Valley Road, Groton, Connecticut."  ECF No. 134-2 at ¶ 7.

- "A.R. Building Company, Inc., as owners of the aforementioned property, [had] a responsibility to ensure that the condition of said property was safe and secure . . . ." *Id.* at ¶16.

- "A.R. Building Company, Inc. contracted with Defendant 84 Lumber Company to furnish all material, equipment, and labor required to install the deck and/or balcony railings at 700 Pleasant Valley Road."  *Id.* at ¶ 10.

- "Plaintiff . . . leaned against the railing of the second-floor deck and/or balcony when said railing unexpectedly and suddenly collapsed, causing Plaintiff to fall approximately fifteen (15) feet to the cement ground below, resulting in severe and permanent injuries to the Plaintiff."  *Id.* at ¶ 15.

- "Defendants . . . A.R. Building Company[ and] 84 Lumber . . . negligently designed and constructed the deck and/or balcony, and railings, in question . . . ."  *Id.* at ¶ 20.

These allegations make clear that Brazao's claim against A.R. Building arises, at least in part, out of 84 Lumber's work related to installation of the railing.[1]  That is enough to trigger the duty to defend under the broad language of the contract.[2]

And if more were needed, the Master Contractor Agreement also includes language requiring 84 Lumber to procure insurance on behalf of A.R. Building: "At all times while performing the Work, and for a period of two (2) years thereafter, [84 Lumber] will maintain for the benefit of itself and A.R. Building . . . the minimum insurance coverages set forth in Attachment A," ECF No. 182-3 at 8, which sets forth limits for certain types of coverage, including commercial general liability coverage for bodily injury with an occurrence limit of $ 1

---

[1] Because the language of the Master Contractor Agreement and the complaint leave no doubt on the issue, I need not decide whether it is proper in evaluating a duty to defend owed by a commercial party to apply the additional gloss Connecticut courts use when assessing the duty to defend in the insurance context—whether "at least one allegation of the complaint falls *even possibly* within the coverage." *Netherlands Ins. Co.*, 312 Conn. at 739 (emphasis added).

[2] The Rider, which is quoted above in the facts section but which the parties do not address in their briefs, does not alter this analysis.  The Rider limits 84 Lumber's "defense, indemnification, hold harmless, additional insured or similar obligation[s]" to "claims, demands, damages, defense expenses . . . or liabilities . . . caused by 84 Lumber's negligence or joint negligence . . . relating to the performance of the Work."  ECF No. 182-3 at 2.  It appears to be aimed at conforming the indemnity language in Section 8 of the Master Contractor Agreement—in particular, a provision requiring 84 Lumber to indemnify A.R. Building even for acts caused by A.R. Building—to a Connecticut statute that bars construction contractors from insulating themselves from their own negligence.  *See* Conn. Gen. Stat. Sec. 52-572k.  I do not read the "caused by 84 Lumber's negligence" language to require that there be an adjudication of causation before 84 Lumber's duty to defend is triggered.  Such a reading would render meaningless the "defense . . . obligation" to cover "claims" and "defense expenses" described earlier in the same sentence, because, as discussed in the text, the word "claims" denotes assertions not yet adjudicated.  It would likewise render meaningless the "additional insured . . . obligation," because such an obligation requires the promisor (*i.e.*, 84 Lumber) to furnish the promisee (here, A.R. Building) with a defense—through the procurement of insurance—while the claim is being adjudicated.  *See Love v. Corroon*, No. FA044003466S, 2011 WL 2417312, at *4 (Conn. Super. Ct. May 17, 2011) ("Our law requires courts to interpret contracts so that no term is rendered meaningless or superfluous.").  The most natural way to harmonize the terms of the Rider, and to harmonize its terms with those of the Master Contractor Agreement itself, is to treat the "caused by 84 Lumber's negligence" language, when applied to "claims," as limiting the nature of the claim to which the duty to defend applies.  In other words, 84 Lumber must defend A.R. Building from claims asserting, at least in part, that the harm was caused by 84 Lumber's negligent performance of the Work (or its joint negligence with others), but it need not defend claims that arise out of the Work but make no allegation that 84 Lumber was negligent.  Here, the plaintiffs' claims fall even within this narrower conception of 84 Lumber's duty to defend.  *See, e.g.*, ECF No. 134-2 ¶¶ 10 (alleging that A.R. Building contracted with 84 Lumber "to furnish all material, equipment, and labor to install the deck and/or balcony railings"), 15 (alleging that Brazao fell when he leaned against railing of the second-floor deck and it unexpectedly collapsed), 17 (alleging that 84 Lumber knew or should have known of the hazard that caused Brazao's fall), and p. 17 ¶ 6 (alleging that 84 Lumber was negligent in designing, constructing, installing, and maintaining the railings).

11

million.  *Id.* at 13.  This provision, too, conveys an intent that 84 Lumber would be responsible for ensuring that A.R. Building was protected from claims asserting bodily injury, including from the need to pay defense costs during the litigation of those claims.  Indeed, even in New York, which generally does not treat the duty to defend outside the insurance context as being any broader than the duty to indemnify, courts regard provisions requiring the procurement of insurance coverage as tantamount to a promise to defend the promisee while claims are being litigated.  *See Dresser-Rand Co. v. Ingersoll Rand Co.*, No. 14 CIV. 7222, 2015 WL 4254033, at *7 (S.D.N.Y. July 14, 2015) (noting that although "contractual defense obligations are generally treated like any other contractual provision" "[o]utside the context of insurance policies," "where an indemnitor has expressly assumed the obligation to insure, it has also assumed the concomitant duty to defend."); *Inner City Redevelopment Corp. v. Thyssenkrupp Elevator Corp.*, 128 A.D. 3d 425, 426 (N.Y. App. Div. May 5, 2015) ("[W]here . . .  a party gives a promise to procure insurance to protect from a certain amount of liability, . . . the promising party must pay any costs, including defense costs . . . .  In that context, [the defendant] is acting like an insurer, and has a broad duty to defend, as an insurer would.").

So regardless whether the Connecticut Supreme Court would conclude that the broad duty to defend borne by insurers should be imposed on commercial parties outside the insurance context, the language of the Master Contractor Agreement and the plaintiffs' complaint supports the imposition of such a duty on 84 Lumber here.  So I grant A.R. Building's motion for summary judgment as to 84 Lumber's duty to defend.

### C.    Count III

A.R. Building also moves for summary judgment on Count III of its third-party complaint against 84 Lumber, which alleges that 84 Lumber breached several of its work

obligations under the Master Contractor Agreement.  ECF No. 44 at 7–9.  For example, A.R. Building alleges 84 Lumber breached the agreement by failing to: furnish all reasonably necessary fasteners, reinforcement, and bracing; provide adequate supervision to complete the scope of its work; furnish all coordination, manufacturing, and fabrication to complete the work; and perform the work in a workmanlike manner.  *See id.* at 8.

But A.R. Building's memorandum of law in support of its motion for summary judgment fails to address whether there is a genuine issue of material fact as to Count III.  *See generally* ECF No. 82 (providing briefing only as to 84 Lumber's indemnity and defense obligations). Without such briefing, I am left to guess as to how the submitted evidence demonstrates that there is no genuine dispute of material fact regarding Count III.  Courts may deny motions for summary judgment on this basis alone.  *See Grabois v. Jones*, 89 F.3d 97, 99 (2d Cir. 1996) ("[T]he moving party bears the burden of establishing the absence of any genuine issue."); *see also Drug Mart Pharmacy Corp. v. Am. Home Prods. Corp.*, 472 F. Supp. 2d 385, 394 (E.D.N.Y. 2007) (citing 10B Fed. Prac. & Proc. Civ. § 2738 (4th ed.) for the proposition that "without at least pointing to the basis for granting summary judgment, the Court cannot grant the motion . . . .").

In any event, a review of the record makes clear that there are genuine disputes of material fact regarding whether 84 Lumber breached its work obligations under the Master Contractor Agreement.  A.R. Building seems to rely implicitly on two facts to support its motion as to Count III: (1) that Brazao fell from the second floor of Building B after the railing collapsed, and (2) that it was 84 Lumber's responsibility under the Master Contractor Agreement to install the railings (whether 84 Lumber completed this work itself or subcontracted the work to another contractor).  But as explained previously, the evidence that other contractors removed

13

and reinstalled the railings on the second floor of Building B raises the reasonable inference that Brazao's fall arose out of the negligence of those other contractors, not any negligence by 84 Lumber.  In other words, even if 84 Lumber satisfactorily performed its work obligations under the Master Contractor Agreement, it is still possible that Brazao would have fallen from the railing.  And because the only damages alleged by A.R. Building are those related to Brazao's fall and the ensuing potential liability and defense costs incurred by A.R. Building, there is at least a genuine dispute of material fact as to whether any contractual breaches by 84 Lumber caused A.R. Building any injury.  Summary judgment is not warranted in such circumstances, and so I deny A.R. Building's motion for summary judgment as to Count III of its crossclaims against 84 Lumber.

## V.    CONCLUSION

For the foregoing reasons, I grant A.R. Building's motion for summary judgment as to 84 Lumber's duty to defend, but I deny its motion as to 84 Lumber's duty to indemnify and as to Count III of its crossclaims.


IT IS SO ORDERED.


                                              _____/s/_____
                                              Michael P. Shea, U.S.D.J.


Dated:         Hartford, Connecticut
               November 9, 2023

14